**STATE**

v.

**John VENTO.**

**85–461–C.A.**

Supreme Court of Rhode Island.

Dec. 2, 1987.

James E. O'Neil, Atty. Gen., Thomas Dickinson, Asst. Atty. Gen., for plaintiff.

William T. Murphy, Providence, for defendant.

## OPINION

FAY, Chief Justice.

The defendant, John Vento, appeals from a judgment of conviction entered by the Superior Court after a jury found him guilty of first-degree-sexual assault in violation of G.L. 1956 (1981 Reenactment)

§ 11–37–2, as amended by P.L.1981, ch. 119, § 1.[1] We affirm the conviction.

The defendant raises several issues that call into question certain rulings made by the trial justice. He first contends that any limitation on his cross-examination of the victim deprived him of his constitutional Sixth Amendment right to confront witnesses against him. The defendant also asserts that testimony regarding his possession and voluntary production of a buck knife at the time of his arrest was sufficient prejudice for the trial justice to pass the case and that she erred by refusing to do so. He also claims that the trial justice further erred when she allowed testimony regarding his attempted suicide as evidence of consciousness of guilt, testimony he claims was far too prejudicial to be cured by any instruction to the jury.

The pertinent facts of this case are as follows. On November 11, 1983, Denise L.,[2] then aged fifteen, while walking on State Street in the town of Bristol, Rhode Island, saw defendant in a laundromat. She had previously been introduced to him. After defendant motioned to her, Denise went inside and she agreed to help him carry his laundry home. Upon dropping off the laundry, the two went to a "pizza place" to eat. While there Denise, for the first time, asked defendant for a ride to her parents' home in Portsmouth, from which she had run away ten days earlier. The defendant flagged down a passing friend of his, Phillip Rodrigues, whom he saw driving a "mail type" truck. Rodrigues and Vento agreed to drive Denise to Portsmouth. First, however, they stopped at a liquor store, where Rodrigues purchased beer and a bottle of Jack Daniels whiskey. After buying the liquor and the beer, the trio drove to a parking lot on the Bristol waterfront. Denise later stated that the two men forced her to drink alcohol. After a second trip to the store for more beer, the group returned to the waterfront. At this point Denise again asked to be taken home. She testified that one of the two men responded, "We'll take you home when we're ready." She also stated that one of the men told her that if she did not drink, they would hurt her.

After consuming more beer and liquor, Denise stated that she got out of the truck to go to the bathroom and "passed out on the ground," later awakening to the sound of laughter. She further testified that she fell asleep again as they were riding in the truck. When she woke up the truck was stopped in "some field." The victim testified that at this point defendant and Rodrigues forcibly raped her in the back of the truck.

While Rodrigues unsuccessfully tried to start the truck, Denise attempted to get out; defendant, however, held the door shut. Finally she escaped, but defendant caught her and warned her not to tell anyone what had happened. After hiding in the woods, she walked to the road where some local men in a passing car stopped to assist her. Since Denise declined a ride to the police station and had nowhere else to go, the men offered her refuge at their home until morning. At that time she returned home to Portsmouth, where her mother called the Warren police. The police met them at the Newport Hospital.

The defendant sought to introduce Denise's testimony from a November 29, 1983 bail hearing as prior inconsistent statements in an attempt to impeach her credibility. At trial Denise consistently maintained that she did not want to drink beer or "hard liquor." At the bail hearing, she testified, "John and I wanted some booze so we were walking down the street and he seen Phillip and he stopped him."

\* \* \* \* \* \*

(c) The accused uses force or coercion."

1. General Laws 1956 (1981 Reenactment) § 11–37–2, as amended by P.L.1981, ch. 119, § 1, in pertinent part reads as follows:
"Definition of guilt of first degree sexual assault. A person is guilty of first degree sexual assault if he or she engages in sexual penetration with another person, not the spouse of the accused and if any of the following circumstances exist:

2. This is not the victim's real name; this court, as it does in all cases of sexual abuse and molestation, changes the name of the innocent victim to protect his/her identity.

At the hearing Denise stated that she drank approximately nine bottles of beer that evening; however, at trial she testified that she did not remember how many bottles of beer or how much liquor she had drunk. Contrary to her bail-hearing testimony, Denise further testified that she did not remember defendant drying her sneakers at a laundromat or one of the men stopping at a store to purchase juice and potato chips.

The trial justice did allow defendant to inquire into Denise's earlier testimony about wanting "booze." However, she ruled that the other statements were not prior inconsistent statements, holding that "there was no inconsistency because she simply said she doesn't remember today." The trial justice did allow defendant to show Denise her prior statements at the bail hearing to try to refresh her recollection; however, she still recalled none of her answers. The defendant's request to read her answers to the jury as past recollection recorded was denied, and it is here defendant claims his Sixth Amendment right of confrontation was denied.

■ The Sixth Amendment of the United States Constitution (and in similar part art. 1, sec. 10, of the Rhode Island Constitution), as applicable to the states through the Fourteenth Amendment, guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him * * * ." Numerous cases have time and again enunciated that the right of cross-examination is an essential element included within the rights conferred by the confrontation clause. *Davis v. Alaska,* 415 U.S. 308, 315–16, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347, 353 (1974); *Douglas v. Alabama,* 380 U.S. 415, 418, 85 S.Ct. 1074, 1076, 13 L.Ed. 2d 934, 937 (1965); *State v. Manocchio,* 523 A.2d 872 (R.I.1987); *State v. Beaumier,* 480 A.2d 1367 (R.I.1984); *State v. Freeman,* 473 A.2d 1149 (R.I.1984); *State v. DeBarros,* 441 A.2d 549 (R.I.1982); *State v. Anthony,* 422 A.2d 921 (R.I. 1980); *State v. Benevides,* 420 A.2d 65 (R.I.1980). This court has further stated, "[I]t is the essence of a fair trial that reasonable latitude

be given the cross-examiner." *State v. Anthony,* 422 A.2d at 924. However, once sufficient cross-examination has been given in order to satisfy the right to confrontation, further cross-examination is within the sound discretion of the trial justice. *State v. Waite,* 484 A.2d 887 (R.I.1984). This discretionary privilege to limit cross-examination grants the trial justice wide latitude in imposing such limitations, based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness's safety, or interrogation that is repetitive or only marginally relevant. *Delaware v. Van Arsdall,* 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986); *State v. Anthony,* 422 A.2d at 924. The United States Supreme Court has further stated that "the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." (Emphasis in original.) *Delaware v. Fensterer,* 474 U.S. 15, 20, 106 S.Ct. 292, 295, 88 L.Ed.2d 15, 19 (1985) (per curiam).

■■ In order for a prior inconsistent statement to be properly used as an impeachment tool upon a witness's credibility, certain evidentiary bricks and mortar need to be put into place. *State v. Robbio,* 526 A.2d 509, 513 (R.I.1987); *State v. Cianci,* 430 A.2d 756, 762 (R.I.1981); *State v. Earley,* 118 R.I. 205, 213, 373 A.2d 162, 166 (1977). This is to say that a proper foundation must be laid by first directing the witness's attention to the nature of the supposed statements, such as when, where, and to whom they were made. *State v. Cianci,* 430 A.2d at 762; *State v. Bowden,* 113 R.I. 649, 324 A.2d 631 (1974); *State v. Vaccaro,* 111 R.I. 59, 298 A.2d 788 (1973). In the case at bar, although defendant laid the necessary foundation for the prior inconsistent statement, we sustain the trial justice's ruling that it was within her sound discretion to find that the trial testimony was not materially inconsistent with the bail-hearing testimony. *State v. Robbio,* 526 A.2d at 513 (citing *State v. Cianci,* 430 A.2d at 762); *Morgan v. Washington Trust Co.,* 105 R.I. 13, 249 A.2d 48 (1969).

*See* Rule 26.1(c) of the Superior Court Rules of Criminal Procedure.[3]

Indeed, the victim did not testify that she did not drink at all; rather, she testified she could not remember how much she drank or other particular events regarding that evening's activities. In light of this court's recent decision in *State v. Manocchio*, 496 A.2d 931 (R.I.1985), it appears that defendant's right to confront witnesses against him has been fully satisfied. In *Manocchio* this court stated:

"It is axiomatic that the ability of a witness to remember accurately and to relate the events in question is of crucial importance to a jury's assessment of that witness's credibility. Where counsel is able to demonstrate that through either passage of time or an intervening mental disease the witness is incapable of recollecting the events in question, or of distinguishing fact from fiction, the most essential element of the witness's value and reliability has been destroyed." *Id.* at 934.

█ The defendant had ample opportunity to present before the jury this witness's inability to remember as an avenue to impeach her credibility. Although this approach varies from prior inconsistent statements, which probe for truth and veracity, his constitutional right to confrontation has been fully satisfied. Thus the scope and extent of cross-examination as a matter primarily within the sound discretion of the trial justice will not be disturbed by this court on appeal, absent a clear abuse of discretion. *State v. Payano*, 528 A.2d 721, 729 (R.I.1987); *State v. Cianci*, 430 A.2d at 761. We therefore hold that the trial justice did not abuse her discretion in denying defendant's request to impeach the complaining witness with prior inconsistent statements. Furthermore, if such error were committed, it would have been harmless. *See Delaware v. Van Arsdall*, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986); *see also State v. Manocchio*, 523

A.2d 872 (R.I.1987); *State v. Burke*, 522 A.2d 725 (R.I.1987).

█ Having been denied the opportunity to impeach the victim's credibility by use of prior inconsistent statements, defendant attempted to present the witness's bail-hearing testimony before the jury as evidence of past recollection recorded. Past recollection recorded is a recognized exception to the hearsay rule in both civil and criminal cases. *See, e.g., Mercurio v. Fascitelli*, 116 R.I. 237, 240, 354 A.2d 736, 738–39 (1976); *State v. Contreras*, 105 R.I. 523, 540, 253 A.2d 612, 621–22 (1969).

The trial justice correctly held that the transcript of this testimony did not satisfy the requirements for the introduction of evidence as past recollection recorded. *McCormick on Evidence*, § 299 at 864 (3d ed. Cleary 1984) delineated the requirements for the admissibility of a memorandum of past recollection recorded as follows:

"(1) the witness must have had firsthand knowledge of the event, (2) the written statement must be an original memorandum made at or near the time of the event and while the witness had a clear and accurate memory of it, (3) *the witness must lack a present recollection of the event, and (4) the witness must vouch for the accuracy of the written memorandum.*" (Emphasis added.)

In the case at bar, the victim cannot vouch for the accuracy of the hearing transcript; thus, the defense cannot comply with an essential element of past recollection recorded. The only testimony permissible in regard to the accuracy of the writing is that of the person who prepared the writing or one who read it at a time close to the event. *Id.* § 303 at 868; *see also State v. Coppola*, 502 A.2d 802, 807 (R.I. 1985). Here the witness took neither of those steps to verify the statement's accuracy. We hold, therefore, that the trial justice correctly precluded its admission into evidence as past recollection recorded.

---

**3.** Rule 26.1(c) of Super. R. Crim. P. provides: "A statement [made by a prosecution witness] may be used at the trial only to impeach the credibility of a witness by demonstrating a material variance between the testimony of the witness and his prior statement."

■ The defendant also contends that the admission of direct testimony of the arresting officer, Terrence Mullen of the Warren Police Department, created sufficient prejudice to pass the case. Officer Mullen testified that upon arresting defendant, the latter voluntarily produced a buck knife. The defendant asserts that this evidence, coupled with prior testimony by the victim that described acts of intimidation and forced drinking, created "a reasonable possibility that the error complained of contributed to the conviction * * * ." *State v. Burke*, 427 A.2d 1302, 1304 (R.I.1981). Both the state and the defense agree that the reference to the buck knife by Officer Mullen was purely accidental and that although defendant moved to pass the case, he did not object to the trial justice's cautionary instruction upon charging the jury. It is within the sound discretion of the trial justice whether to grant a mistrial. *State v. Payano*, 528 A.2d at 726; *State v. Fernandes*, 526 A.2d 495, 498 (R.I.1987). "If the prejudice is inexpiable, the motion to pass should be granted. If the prejudice can be cured, the instructions which follow must be timely and effective." *State v. Anil*, 417 A.2d 1367, 1373 (R.I.1980) (quoting *State v. Marrapese*, 116 R.I. 1, 7, 351 A.2d 95, 98 (1976)). Indeed the trial justice did make a timely instruction to the jury to disregard any testimony regarding defendant's possession of a buck knife twenty-four hours subsequent to the sexual assault adding that there was no indication defendant had threatened the victim or the arresting officer with the knife. Thus it appears that any reference to the buck knife was not of "such a nature as to distract the jurors from a calm and dispassionate examination of the evidence." *State v. Payano*, 528 A.2d at 726; *see also State v. Brown*, 522 A.2d 208 (R.I.1987). This court therefore holds that it was within the trial justice's discretion to deny passing the case and to instruct the jury to disregard that testimony.

■ The defendant lastly contends that admission of testimony regarding his attempted suicide and subsequent presence in Rhode Island Hospital created prejudice of consciousness of guilt. We hold that this claim clearly lacks merit. Any statements given by defendant during his stay in the hospital necessitated an explanation as to why he was there. Quite contrary to defendant's contention that this evidence was prejudicial, the record reflects that the defense would have attempted to use information regarding a suicide in a positive way. The defendant intended to utilize the testimony regarding the attempted suicide as evidence of his despondency over the false accusations against him. With the agreement of the parties, the trial justice steered both attorneys away from using such testimony in final argument. She also instructed the jurors in her charge that "they were not to draw any conclusions one way or the other about the suicide attempt, either for the defendant or against him." As we have mentioned before, this court will assume that the jury will follow the instructions of the trial justice regarding the consideration of evidence; moreover, this court will not overrule a trial justice's decision as to the weight and admissibility of evidence unless clearly wrong. *State v. Payano*, 528 A.2d at 727.

In light of the foregoing, this court holds that the trial justice did not impermissibly limit the defendant's right of cross-examination and that any testimony regarding the defendant's possession of a buck knife and purported attempted suicide was cured by the trial justice's timely and effective instructions to the jury.

The defendant's appeal is denied and dismissed, and the judgment appealed from is affirmed.